UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAM ATLE JØRGENSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ROWAN COMPANIES PLC, WILLIAM E. ALBRECHT, THOMAS P. BURKE, THOMAS R. HIX, JACK B. MOORE, SUZANNE P. NIMOCKS, THIERRY PILENKO, JOHN J. QUICKE, TORE I. SANDVOLD, and CHARLES L. SZEWS,<br><br>　　　　　　　　Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>2. **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Sam Atle Jørgensen ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.　This is a class action brought by Plaintiff on behalf of himself and the other shareholders of Rowan Companies plc ("Rowan" or the "Company"), except Defendants (defined below) and their affiliates, against Rowan and the members of Rowan's board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Rowan and Ensco plc ("Ensco").

1

2. On October 7, 2018, the Board caused the Company to enter into transaction agreement (the "Transaction Agreement") with the Ensco, pursuant to which, Rowan shareholders will receive 2.215 Class A ordinary shares on Ensco stock for each share of Rowan stock they own (the "Merger Consideration").

3. On, October 30, 2018, the Board authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act that recommends shareholders vote in favor of the Proposed Merger.

4. While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading. Specifically, the Proxy contains materially incomplete and misleading information concerning: (i) the valuation analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"), in support of their fairness opinion; and (ii) the background of the Proposed Merger.

5. It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

6. For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed

below is disclosed to Rowan shareholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Rowan's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

10. Plaintiff is, and has been at all relevant times, the owner of Rowan common stock and held such stock since prior to the wrongs complained of herein.

11. Defendant Rowan is a UK public limited company with its registered office and principal executive offices are located at 2800 Post Oak Boulevard, Suite 5450 Houston, Texas 77056. The Company is a global provider of offshore contract drilling services to the oil and gas industry in the ultra-deepwater and shallow water market, with a focus on high-specification and harsh-environment jack-up rigs and ultra-deepwater drillships. Rowan's common stock trades on the NYSE under the symbol "RDC."

12. Individual Defendant William E. Albrecht is director of Rowan and Chairman of the Board.

13. Individual Defendant Thomas P. Burke is a director of Rowan and the President and Chief Executive Officer of the Company.

14. Individual Defendant Thomas R. Hix is, and has been at all relevant times, a director of Rowan.

15. Individual Defendant Jack B. Moore is, and has been at all relevant times, Lead Director of Rowan.

16. Individual Defendant Suzanne P. Nimocks is, and has been at all relevant times, a director of Rowan.

17. Individual Defendant Thierry Pilenko is, and has been at all relevant times, a director of Rowan.

18. Individual Defendant John J. Quicke is, and has been at all relevant times, a director of Rowan.

19. Individual Defendant Tore I. Sandvold is, and has been at all relevant times, a director of Rowan.

20. Individual Defendant Charles L. Szews is, and has been at all relevant times, a director of Rowan.

21. The parties identified in ¶¶ 11-20 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Rowan common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

23. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of the close of business on October 24, 2018, Rowan had 127,068,684 common shares outstanding held by hundreds to thousands of individuals and entities—the actual number of public shareholders of Rowan will be ascertained through discovery;

(b) The holders of these shares are believed to be geographically dispersed through the United States;

(c) There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

      i. Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

5

> ii. Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and
>
> iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**I.   Background and the Proposed Merger**

24. Rowan, incorporated on October 11, 2011, the oil and gas industry in the ultra-deepwater and shallow water market, with a focus on high-specification and harsh-environment jack-up rigs and ultra-deepwater drillships. Rowan operates in three segments: Deepwater, Jack-ups, and Saudi Aramco Rowan Offshore Drilling Company ("ARO"), Rowan's 50/50 joint venture with Saudi Aramco Development Company ("Saudi Aramco"). The Deepwater segment includes four ultra-deepwater drillships. The Jack-ups segment is currently composed of 21 self-elevating jack-up rigs and includes the impact of the various arrangements with ARO. ARO owns a fleet of

seven self-elevating jack-up rigs, including two jack-ups that were sold to ARO by Rowan effective October 1, 2018, for operation in the Arabian Gulf for Saudi Aramco.

25. Ensco incorporated on September 18, 2009, is an offshore contract drilling company. It provides offshore contract drilling services to the international oil and gas industry. Ensco operates through three segments: Floaters, Jackups, and Other. Its Floaters segment includes drillships and semisubmersible rigs. The Other segment consists of management services on rigs owned by third parties. The Floaters and the Jackups segments provide contract drilling. Ensco owns and operates an offshore drilling rig fleet of 56 rigs, with drilling operations in most of the strategic markets around the globe.

26. October 8, 2018, Ensco and Rowan issued a joint press release to announce the Proposed Merger stating, in relevant part, as follows:

**Ensco plc and Rowan Companies plc Agree to Combine,
Creating Industry-Leading Offshore Driller**

Broad Portfolio of High-Specification Floaters and Jack-ups
Diverse Customer Base Includes Most of the Largest Holders of Offshore Reserves
Broadest Geographic Presence of Any Offshore Driller
Well Capitalized with Combined Liquidity of $3.9 Billion
$150 Million of Anticipated Annual Expense Synergies
Accretive to Cash Flow Per Share in First Full Year Following Closing
Clear Leader in Customer Satisfaction with Strong Focus on Safety and Operations

London – 8 October 2018 – Ensco plc (NYSE: ESV) and Rowan Companies plc (NYSE: RDC) jointly announced today that the companies have entered into a definitive transaction agreement under which Rowan will combine with Ensco in an all-stock transaction. The definitive transaction agreement was unanimously approved by each company's board of directors. The Saudi Aramco partner to the ARO Drilling joint venture has consented to the combination between Rowan and Ensco.

Under the terms of the transaction agreement, Rowan shareholders will receive 2.215 Ensco shares for each Rowan share. Upon closing, Ensco and Rowan shareholders will own approximately 60.5% and 39.5%, respectively, of the

outstanding shares of the combined entity. There are no financing conditions for this transaction.

The combined company expects to realize annual pre-tax expense synergies of approximately $150 million, with more than 75% of targeted synergies expected to be realized within one year of closing. As a result, the transaction is projected to be accretive to cash flow per share in 2020 following an anticipated closing in the first half of 2019.

Rowan President and Chief Executive Officer Tom Burke, who will serve as President and Chief Executive Officer of the combined company, said, "We are excited to reach an agreement to combine our well-respected organizations, enabling both Rowan and Ensco shareholders to participate in the substantial value creation opportunities of a larger, more technologically-advanced and diverse offshore drilling company. By merging our high-quality rig fleets and infrastructure covering the world's most prolific offshore basins, we increase our scale while maintaining a shared focus on high-specification assets that will include ultra-deepwater drillships and versatile semisubmersibles, as well as harsh environment and modern jack-ups. Rowan shareholders also benefit from the addition of significant backlog and substantial scale in ultra-deepwater operations. The combined entity's talented workforce, unrivaled geographic and customer diversification, and solid financial position ideally position us to meet increasing customer demand for the most technologically-advanced drilling rigs as the offshore sector recovers."

Ensco President and Chief Executive Officer Carl Trowell, who will serve as Executive Chairman of the combined company, stated, "The combination of Ensco and Rowan will create an industry leader in offshore drilling across all water depths, with significant advantages to capitalize on future opportunities and better serve our customers. Ensco and Rowan share a common culture built around safety and operational excellence, innovation, technical expertise and customer satisfaction. Through this combination, Ensco shareholders will uniquely benefit from Rowan's strategic joint venture with Saudi Aramco, ARO Drilling, while all stakeholders will share in meaningful cost savings and even greater upside to improving market conditions as the industry recovery continues gaining momentum."

**Combined Company Highlights and Strategic Fit**

*Creating a leading offshore rig fleet, with many of the industry's highest specification assets*

- The combination will bring together both companies' complementary businesses, creating a leading offshore driller by fleet size, geographic presence and customer base, with 82 rigs[1] spanning six continents and collectively serving more than 35 customers, including the largest national

oil companies, international majors and independent exploration and production companies.

- The combined company's rig fleet of 28 floaters and 54 jack-ups will be among the most technologically-advanced in the industry, capable of providing a wide range of drilling services to an expanded base of clients around the world, and will be ideally positioned to meet increasing levels of customer demand for the highest-specification ultra-deepwater drillships and harsh environment jack-ups.

- Within the fleet of 28 floating rigs (drillships and semisubmersibles) are 25 ultra-deepwater rigs capable of drilling in water depths of greater than 7,500 feet, with an average age of six years – establishing this fleet among the youngest and most capable in the industry. The combined fleet will also have the second-largest fleet of the highest-specification drillships2 in the industry, with 11 of these seventh generation ultra-deepwater rigs.

- The 54-rig jack-up fleet will include 38 units that are equipped with many of the advanced features requested by clients with shallow-water drilling programs, such as increased leg length, expanded cantilever reach and greater hoisting capacity. Among the combined company's jack-up fleet are seven ultra-harsh environment units and nine additional modern harsh environment rigs.

*Unparalleled geographic coverage*

- The combined company will be the most geographically-diverse offshore driller with current operations and drilling contracts spanning six continents in nearly every major deep- and shallow-water basin around the world including the Gulf of Mexico, Brazil, West Africa, North Sea, Mediterranean, Middle East, Southeast Asia and Australia.

- Ensco shareholders will gain exposure to the ARO Drilling joint venture and ultra-harsh environment jack-ups, along with a presence in Norway. Rowan shareholders gain access to Ensco's strong relationships with large deepwater customers and wider geographic footprint, which includes a presence in Brazil, West Africa, Southeast Asia and Australia, along with a versatile semisubmersible fleet.

*Servicing the broadest customer base, with continued emphasis on customer satisfaction*

- Customers of the combined company will include most of the leading national and international oil companies, plus many independent operators. Customers will benefit from enhanced diversification of high-quality assets that best meet their drilling requirements.

- Both companies have long track records of being recognized as leaders in customer satisfaction, including eight consecutive years ranked #1 in total satisfaction and seven years ranked #1 for high pressure, high temperature application among offshore drillers by EnergyPoint Research. The combined company will continue its commitment of delivering industry-leading service.

*Technology focus to differentiate services and lower costs*

- The combined company is dedicated to deploying new technologies and innovative solutions that differentiate its services and drive operational integrity and performance at the well site. With a larger, more diversified fleet, the combined company can economically develop and deploy these advancements across a wider asset base and global footprint.

- The combined company is expected to leverage ARO Drilling's 20-rig new build program to develop and deploy leading-edge technology at scale.

Financial Highlights

The combined entity is expected to generate future revenue growth opportunities as it capitalizes on an expanded, high-quality fleet serving a larger customer base across a wider geographic footprint. Estimated annual expense savings of $150 million are expected to be realized primarily from corporate and regional overlaps, supply chain efficiencies as well as the standardization of systems, policies and procedures across the combined organization. Based on these anticipated annual savings, the planned combination is expected to be accretive to cash flow per share annually for the combined entity beginning in 2020.

The combined company's balance sheet is expected to have liquidity of approximately $3.9 billion, including $1.9 billion of cash and short-term investments3, providing the new entity with the financial flexibility to continue investing in the fleet and innovations aimed at improving drilling efficiencies. The combined company's credit profile will benefit from increased scale and significantly enhanced diversification across regions, rig types, customers and expertise due to the diverse makeup of its respective businesses. The total estimated revenue backlog for the combined company is approximately $2.7 billion3, excluding ARO Drilling's substantial backlog which is unconsolidated. Based on the closing price of each company's shares on 5 October 2018, the estimated enterprise value of the combined company is $12.0 billion.

**Governance**

Carl Trowell will become the combined company's Executive Chairman, Tom Burke will serve as President and Chief Executive Officer, and Jon Baksht will

serve as Senior Vice President and Chief Financial Officer. The remaining executive management team for the combined company will be named at a later date and will comprise executives from both Ensco and Rowan. Effective upon closing, the combined company's board of directors will include Carl Trowell and Tom Burke, plus five additional members from Ensco's current board and four additional members from Rowan's current board.

The combined company will be domiciled in the United Kingdom, where both Ensco and Rowan are currently domiciled, and senior executive officers will be located in London and Houston.

**Conditions and Timing**

The transaction is subject to approval by the shareholders of Ensco and Rowan and regulatory authorities, as well as other customary closing conditions. In addition, the transaction will be subject to court approval pursuant to a UK court-sanctioned scheme of arrangement. The transaction is not subject to any financing conditions. Ensco and Rowan intend to file a joint proxy statement with the Securities and Exchange Commission as soon as possible. The companies anticipate that the transaction will close during the first half of 2019.

**Advisors**

Morgan Stanley & Co. LLC is lead financial advisor to Ensco. HSBC Securities (USA) Inc. and Citigroup Global Markets Inc. also provided financial advice to Ensco. Ensco's legal advisors are Gibson, Dunn & Crutcher LLP and Slaughter and May. The financial advisor for Rowan is Goldman Sachs & Co. LLC and its legal advisors are Kirkland & Ellis LLP and Latham & Watkins LLP.

27. Merger Consideration represents inadequate compensation for Rowan shareholders. Since the announcement of the Proposed Merger, the stock price of Rowan has decreased a little over 12% indicating that the Merger Consideration undervalues the Company. Indeed, one of the Company's largest shareholders recently filed a Schedule 13D with the SEC stating their belief "that the Merger does not attribute adequate value to the Issuer." It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

**II.     The Proxy Is Materially Incomplete and Misleading**

28.     On October 30, 2018, Rowan filed the Proxy with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to cast an informed vote regarding Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

29.     First, with respect to the *Discounted Cash Flow* ("DCF") Analyses prepared by Goldman, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying the selection of the discount rate range of 9.50% to 10.50% for Rowan, including the WACC components and company-specific CAPM inputs; (ii) the inputs and assumptions underlying the selection of the discount rate range of 10.00% to 11.00% for Ensco, including the WACC components and company-specific CAPM inputs; (iii) the inputs and assumptions underlying the selection of the discount rate range of 10.00% to 11.00% for the Pro Forma Combined Company, including the WACC components and company-specific CAPM inputs; (iv) which case of Ensco projections Goldman used for the Ensco DCF; and (v) the actual terminal values calculated for each DCF analysis.

30.     These key inputs are material to Rowan shareholders, and their omission renders the summary of the *Discounted Cash Flow* Analyses incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several

key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" Id. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

31.     Without the above-omitted information Rowan shareholders are misled as to the reasonableness or reliability of the Goldman's analyses, and unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summaries of the *Discounted Cash Flow* Analyses included in the Proxy misleading.

32.     Second, with respect to the *Background of the Transaction*, the Proxy states that Rowan and multiple parties entered into confidentiality agreements, but fails to disclose whether such agreements contained a standstill provision and/or a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Transaction Agreement or were still in effect. The Proxy makes reference to a standstill provision in the confidentiality agreement executed between Rowan and Ensco, but fails to provide similar disclosure for the rest of the confidentiality agreements. Such information is material to Rowan shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the

Company to offer them a better deal. The failure to disclose the existence of DADW provisions creates the false impression that any of the parties who signed confidentiality agreements could have made a superior proposal. If those confidentiality agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the descriptions of the confidentiality agreements the Company entered into in the *Background of the Transaction* section of the Proxy misleading. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

33. In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

38. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding: (i) the valuation analyses performed by Goldman; and (ii) the background of the Proposed Merger.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

40. Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections for Rowan and the details surrounding discussions with other interested parties and Goldman. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review Goldman's analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41. Each of the Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it—which they were required to do carefully. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Transaction Agreement, the preparation and review of strategic alternatives, and the review of Rowan's financial projections.

42. Rowan is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Proxy.

43. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and will deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Merger. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Rowan within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Rowan, and participation in and/or awareness of the Rowan's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Rowan, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Rowan, and, therefore, is presumed to have had the

power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

48. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Transaction Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

51. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. Rescinding, to the extent already implemented, the Transaction Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 9, 2018                    Respectfully submitted,

*/s/ Juan E. Monteverde*
    Juan E. Monteverde

**MONTEVERDE & ASSOCIATES PC**
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*